**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JBS PACKERLAND, INC., <br><br> Plaintiff, <br><br> v. <br><br> PHILLIPS CATTLE CO., INC., <br><br> Defendant. | Case No. 24-cv-01299-BAS-MSB <br><br> **ORDER:** <br><br> **(1) GRANTING MOTION TO SEAL (ECF No. 19); AND** <br><br> **(2) GRANTING MOTION FOR DEFAULT JUDGMENT AND REQUEST FOR ATTORNEYS' FEES AND COSTS (ECF No. 21)** |

    This is a breach of contract case arising in the meat processing industry, specifically concerning futures contracts for the purchase and delivery of Holstein steers across the United States. Before the Court are Plaintiff JBS Packerland, Inc.'s ("JBS") Motion for Default Judgment and Request for Attorneys' Fees and Costs ("Motion for Default Judgment") against Defendant Phillips Cattle Co., Inc. ("Phillips Cattle") (ECF No. 21) and Motion to Seal (ECF No. 19). The Court finds the Motions suitable for determination

- 1 -

24cv1299

on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons set forth below, Plaintiff's Motions are **GRANTED**.

## I.    BACKGROUND

JBS Packerland, Inc., a Delaware corporation with its principal place of business in Colorado, operates in the meat processing industry and executes futures contracts with various suppliers for the purchase and delivery of Holstein steers across the United States. (Compl. ¶ 1, ECF No. 1; Loewe Decl. ¶ 3.) On June 23, 2022, JBS entered into six separate futures contracts with Phillips Cattle, a California corporation, for the purchase and delivery of Holstein steers. (Compl. ¶ 6; Loewe Decl. ¶ 5.) These contracts were negotiated and executed in California, where Phillips Cattle is based, and the steers were to be delivered from California. (Loewe Decl. ¶¶ 5, 7.)

Phillips Cattle failed to deliver the contracted quantities of Holstein steers as required under the agreements. (*Id.* ¶ 8.) Specifically, the contracts required delivery of a specified weight of Holstein steers in March and April 2023, but Phillips Cattle did not fulfill these obligations, resulting in a significant shortfall. (Compl. ¶ 13; Loewe Decl. ¶ 15.) As a result, JBS incurred additional costs to cover the shortfall by purchasing replacement steers at a higher premium than originally contracted. (Compl. ¶ 18.) The contracts also included indemnification provisions obligating Phillips Cattle to cover any losses arising from breaches, including attorneys' fees and costs. (*Id.* ¶ 17.)

Despite attempts by JBS to resolve the issue amicably, Phillips Cattle did not respond to communications or honor its indemnification obligations. (Loewe Decl. ¶ 17.) Consequently, JBS brought this action against Phillips Cattle for breach of contract, indemnification, and unjust enrichment on July 25, 2024, and requested attorneys' fees and costs pursuant to the terms of Section 4 of each contract. (Compl. ¶ 17, Prayer for Relief ¶ 3.) Phillips Cattle was duly served with the Summons and Complaint on August 25, 2024. (ECF No. 11.) Phillips Cattle failed to answer or otherwise appear in the action, and the Clerk entered default against it on September 24, 2024. (ECF No. 13.)

On October 24, 2024, JBS filed its Motion for Default Judgment, seeking a total judgment amount of $153,743.11, which includes $31,720.00 in attorneys' fees and $2,354.87 in costs, along with pre- and post-judgment interest. (ECF No. 21-1 at 14:4–8.) Concurrently, JBS filed its Motion to Seal the Motion for Default Judgment, along with the supporting Memorandum of Points and Authorities and Declaration of J.T. Loewe. (ECF No. 19.)

## II.   LEGAL STANDARD

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs applications to the court for default judgment. Entry of default judgment is within the trial court's discretion. *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 660 (S.D. Cal. 1997) (citing *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956)). In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (collectively, "*Eitel* factors"). *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default, the factual allegations in plaintiff's complaint, except those relating to damages, are deemed admitted. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## III.   ANALYSIS

As an initial matter, Plaintiff has met the first step of the two-step process for obtaining default judgment. Pursuant to Rule 55(a), the Clerk of the Court correctly entered default against Defendant because it has not appeared in the case. (ECF No. 13.) Thus, in its discretion, the Court may order default judgment after confirming jurisdiction, adequacy of service of process, and balancing the *Eitel* factors.

### A. Jurisdiction & Service of Process

When ruling on a motion for default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" given that "[a] judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *Id.*; *see also Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (recommending the district judge "deny Facebook's motion for default judgment and . . . dismiss this action for lack of personal jurisdiction"). "The Court is also required to assess the adequacy of the service of process on the party against whom default is requested." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877 (N.D. Cal. 2012) (citation omitted).

Federal subject-matter jurisdiction may exist due to the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the parties, *see* 28 U.S.C. § 1332. Under federal law, "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." *Id.* § 1332(a). Here, Plaintiff is seeking a total judgment amount of $153,743.11. (ECF No. 21-1 at 14:4–8.) This amount satisfies the minimum amount in controversy necessary to invoke diversity jurisdiction under 28 U.S.C. § 1332.

Furthermore, the Court finds there is also complete diversity among the parties. "For the purpose of diversity jurisdiction, a corporation is deemed a citizen of both the state in which it is incorporated and the state where it has its principal place of business." *Motameni v. Adams*, No. 3:21-CV-01184-HZ, 2021 WL 5281035, at *2 (D. Or. Nov. 8, 2021); 28 U.S.C. § 1332(c)(1). JBS Packerland, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Colorado. (Compl. ¶ 1.) Phillips Cattle is a corporation organized under the laws of the State of California, with its principal place of business in California. (*Id.* ¶ 2.) Because JBS is a citizen of Delaware

and Colorado, and Phillips Cattle is a citizen of California, there is complete diversity between Plaintiff and Defendant. Accordingly, this Court has subject matter jurisdiction.

Personal jurisdiction takes two forms: general and specific. *Skistimas v. Hotworx Franchising LLC*, No. 3:23-CV-05974-DGE, 2024 WL 4545006, at *2 (W.D. Wash. Oct. 22, 2024). In this case, for purposes of personal jurisdiction over a corporate defendant, "[t]he paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Treating all facts in the Complaint as admitted, *TeleVideo Systems, Inc.*, 826 F.2d at 917–18, the Court finds that Defendant is subject to general jurisdiction because it is incorporated in California and has its principal place of business there. (Compl. ¶ 2.)

Finally, Plaintiff adequately served Defendant. (ECF No. 11.) Defendant is neither a minor nor an incompetent person and is not in military service or otherwise subject to the Soldiers and Sailors Civil Relief Act of 1940. Having confirmed jurisdiction and the adequacy of service, the Court now turns to the *Eitel* factors.

### B. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor asks the Court to consider the possibility of prejudice to the plaintiff. A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No. 2:17-cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019). Here, Phillips Cattle has not answered or otherwise participated in the suit, and the Court finds JBS will be prejudiced if default judgment is not entered because it will "likely be without other recourse for recovery." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Accordingly, this factor weighs in favor of default judgment.

#### 2. Substantive Merits and Sufficiency of the Complaint

The second and third factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. These factors, often analyzed

together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citation omitted). If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010). As detailed below, these two factors weigh in favor of granting default judgment for JBS's breach of contract and express contractual indemnity claim.

But before turning to the merits and sufficiency, the Court must first address choice of law issues to determine which forum's law applies to these claims. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). A federal court sitting in diversity looks to the forum state's choice of law rules to determine the controlling substantive law. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). Because this action is based on diversity jurisdiction, the Court applies California's choice of law rules.

Absent an effective choice of law by the parties, courts assess the relevant contacts under the Restatement (Second) of Conflict of Laws § 188(2), which considers: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993).

Here, Plaintiff argues the circumstances of this case support the application of California law to JBS's claims, presumably because the parties did not expressly choose a governing law in their agreements. (ECF No. 21-1 at 3:14–23.) The contracts were negotiated and executed with Phillips Cattle, a California corporation with its principal place of business in California. (Compl. ¶¶ 2, 6; Loewe Decl. ¶¶ 4–5.) Additionally, the subjects of the contracts—the Holstein steers—were located in California, and Phillips Cattle's contractual obligation—to deliver the steers—originated in California. (Loewe Decl. ¶ 7.) While JBS is incorporated in Delaware, it operates nationwide and conducts business in California, as demonstrated by its multiple contracts with Defendant in the state. (Compl. ¶ 1; Loewe Decl. ¶ 3.) Because the contracts were formed, performed, and concerned subject matter located in California, and Defendant is a California corporation, the relevant Restatement § 188(2) factors favor the application of California law.

### i.  Breach of Contract

To recover damages for a breach of contract under California law, the plaintiff must prove: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Accepting the well-pleaded allegations of the Complaint as true, the Court concludes that JBS has established all the elements of its breach of contract claim.

As alleged in the Complaint: JBS entered into six separate futures contracts with Phillips Cattle for the purchase and delivery of Holstein steers on June 23, 2022. (Compl. ¶¶ 6–12.) JBS has substantially performed and continues to perform its obligations under the contracts or is otherwise excused from performance. (*Id.* ¶ 21.) Phillips Cattle has failed to perform its contractual obligations by failing to deliver the total contracted weight of Holstein steers, thereby breaching the contract. (*Id.* ¶ 22.) As a result of this breach, JBS has suffered financial harm, having been forced to purchase additional Holstein steers

at a higher premium to cover the shortfall. (*Id.* ¶¶ 18, 23.) Accordingly, the second and third *Eitel* factors weigh in favor of default judgment on JBS's breach of contract claim.[1]

### ii.  Express Contractual Indemnity

The next cause of action is for express contractual indemnity. In California:

> [A]n indemnitee seeking to recover on an agreement for indemnification must allege the parties' contractual relationship, the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim, the facts showing a loss within the meaning of the parties' indemnification agreement, and the amount of damages sustained.

*C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 699–700 (2019) (citation omitted).

To that end, JBS bases its second claim for express contractual indemnity on Section 4 of each contract, which requires Phillips Cattle to indemnify JBS from Defendant's breach of the contracts' terms. Specifically, Section 4 of each contract provides as follows:

> **Seller's Indemnification Obligations.**
>
> (a) General Indemnification Obligation: Seller agrees to indemnify and hold JBS harmless from and against any and all claims, causes of action, damages, losses, liability, proceedings, judgments, actions, costs and expenses (including attorney's fees and proceeding costs) arising from or relating to Seller's breach of any terms, representations or warranties of this Agreement.
>
> (b) Delivery and Hedging Indemnification: Seller acknowledges and agrees that Seller's failure to deliver the Units of Holsteins in the Delivery Month and at the Delivery Location provided in this Agreement may result in substantial financial injury to JBS, including losses incurred by JBS in connection with JBS's hedging its price risk for the Holsteins purchased

---

[1] Under California law, unjust enrichment is generally not a standalone cause of action but may be construed as a quasi-contract claim for restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, it cannot stand where an enforceable express contract governs the dispute. *Sutra Beauty, Inc. v. Duran*, No. 2:18-CV-03768-ODW-SSX, 2019 WL 688201, at *3 (C.D. Cal. Feb. 15, 2019). Here, JBS's unjust enrichment claim is precluded because six express futures contracts govern the dispute, defining the parties' rights and obligations. Since JBS's claim arises from Phillips Cattle's failure to perform under these enforceable contracts, a separate unjust enrichment claim is barred.

- 8 -

hereunder by the use of futures and options (each, a "Hedge") on the Chicago Mercantile Exchange. In the event that Seller fails to perform as provided in this Agreement, JBS may exercise all rights and remedies available to it in contract, law or otherwise, including, without limitation: (i) all reasonable expenses incurred in obtaining each replacement Holstein, including any additional cost of the replacement Holstein; (ii) any losses arising from lifting its Hedge; and (iii) all expenses incurred in connection with collecting from Seller any amounts owing hereunder including, without limitation, reasonable attorney's fees.

(Compl. ¶ 17.)

The Court finds that JBS has sufficiently pled its contractual indemnification claim. Plaintiff alleges the existence of a contractual relationship through six separate futures contracts with Phillips Cattle. (*Id.* ¶¶ 6–12.) JBS further asserts that it substantially performed its obligations, while Defendant breached its obligations under the contracts. (*Id.* ¶¶ 21–22.) Moreover, JBS alleges facts demonstrating a loss within the scope of the parties' indemnification agreement. (*Id.* ¶¶ 6–12, 22, 29.) Specifically, Phillips Cattle's failure to deliver the required weight of Holstein steers by the agreed-upon dates constitutes a breach that falls within the express terms of Section 4. (*Id.* ¶ 17.) Finally, JBS asserts that it sustained damages as a result of this breach. (*Id.* ¶ 18.) Accordingly, the Court concludes that Plaintiff has sufficiently pled a meritorious claim for express contractual indemnity.

### 3. The Sum of Money at Stake in the Action

According to the fourth *Eitel* factor, the court must consider "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Eitel*, 782 F.2d at 1471–72. If the sum of money at stake is completely disproportionate or inappropriate, then default judgment is disfavored. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). When proper evidence is presented which shows that the compensation sought is consistent with the terms of the contract and is otherwise appropriate, the court should find that this factor weighs in favor of entry of default

judgment. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (S.D. Cal. 2010).

Here, JBS seeks actual damages equivalent to the hedging loss incurred to it resulting from the shortfall of undelivered weight against each contract, plus pre-judgment interest. (ECF No. 21-1 at 8:13–24; Loewe Decl. ¶¶ 9–15.) These amounts are supported by Plaintiff's evidence, as discussed in detail below. Additionally, Plaintiff requests $31,720.00 in attorneys' fees and $2,354.87 in costs. (ECF No. 21-1 at 14:4–8; Loewe Decl. ¶ 27.) In total, Plaintiff seeks $153,743.11, plus postjudgment interest. (*Id.*) This amount is reasonable in light of the allegations contained in the complaint. Accordingly, this factor weighs in favor of granting default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor asks the court to consider whether there is a possibility of dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. Where, as here, a defendant fails to file an answer or otherwise respond to the operative complaint, the court is left with no disputed facts. "In such cases, courts routinely find that no factual dispute exists, and that therefore, this *Eitel* factor weighs in favor of granting default judgment." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889 (S.D. Cal. 2021).

As Defendant has neither responded nor appeared in this case, there is no dispute concerning material facts. Accordingly, this factor weighs in favor of granting default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. "There is little possibility of excusable neglect when the defendant is properly served or is aware of the litigation." *McDermott v. RYI Unity LLC*, No. 8:23-cv-00927-MCS-JDE, 2023 WL 9418045, at *3 (C.D. Cal. Dec. 19, 2023). Plaintiff properly served Defendant. (ECF No. 11.) The Court finds it unlikely that Defendant is unaware of these proceedings. Accordingly, the possibility of excusable neglect does not prevent the entry of default judgment.

### 6. Policy Favoring Decision on the Merits

Lastly, "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the other *Eitel* factors outweigh this baseline policy because Defendant's failure to appear or otherwise respond to Plaintiff's Complaint makes a decision on the merits impossible.

In sum, because the *Eitel* factors weigh in Plaintiff's favor, default judgment is appropriate. Accordingly, the Court enters default judgment against Defendant for the breach of contract and express contractual indemnity claims.

## C. Terms of Judgment

### 1. Actual Damages

Having concluded entering default judgment for Plaintiff to be appropriate in this matter, the Court must now turn to the damages Plaintiff seeks. Under Rule 8(a)(3), Plaintiff's demand for relief must be specific, and it "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005). Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default." *Elektra Entm't Grp. v. Bryant*, No. CV 03–6381GAF (JTLx), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1174 (stating that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]").

Furthermore, "a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). The burden falls on the Plaintiff to prove its damages and requests for relief. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Ultimately, "granting damages is within 'wide latitude' of the district court's discretion." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

Here, Plaintiff's methodology is based on specific contractual terms and market figures and the damages are readily ascertainable through objective computation. Plaintiff

calculates hedging loss based on Defendant's failure to deliver the contracted weight of Holstein steers at the fixed price established on the Chicago Mercantile Exchange. (Loewe Decl. ¶ 6.) This shortfall created a deficit in each contract, requiring Plaintiff to cover the margin difference between the contracted price and the market price at the time of delivery. (Compl. ¶¶ 18, 32–33.) The total hedging loss is determined by multiplying the undelivered weight by this price difference, representing the additional margin Plaintiff paid to the original contract positions. (Loewe Decl. ¶¶ 9–15.)

Accordingly, the Court finds that Plaintiff has provided sufficient proof of the damages amount through its Complaint and Declaration from J.T. Loewe, and thus, Plaintiff is entitled to the full amount of compensatory damages. *See Nike, Inc. v. B&B Clothing Co.*, No. CIV S-06-2828 GEB DAD, 2007 WL 1515307, at *1 (E.D. Cal. May 22, 2007) (internal citations omitted) ("Where damages are liquidated or otherwise capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.").

## 2. Prejudgment Interest

Plaintiff also seeks prejudgment interest pursuant to California Civil Procedure Code § 3287. (ECF No. 21-1 at 8:25–9:14). Prejudgment interest "serves to compensate [the prevailing wronged party] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (internal quotation omitted). State law generally governs the award of prejudgment interest in diversity actions. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). California Civil Procedure Code § 3287(a) provides that a party "entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled to also recover interest thereon from that day. . . ." Further, the obligation set forth by a contract "shall bear interest at a rate of 10 percent per annum after a breach" unless the contract stipulates a different interest rate. Cal. Civ. Proc. Code § 3289(b).

Here, the damages arise from fixed contractual obligations, and the amount due is readily ascertainable from the contracts' terms. (Loewe Decl. ¶¶ 9–15). Likewise, Plaintiff's right to recover vested in a determinable manner, as the breaches of contract provide clear starting points for prejudgment interest accrual. (*Id.* ¶¶ 20–25). Accordingly, the Court finds that Plaintiff is entitled to recover the full amount of prejudgment interest.

### 3. Postjudgment Interest

Plaintiff also seeks postjudgment interest. In a diversity action, postjudgment interest is governed by federal law. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998). Under 28 U.S.C. § 1961(a), postjudgment interest is mandatory. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Section 1961(a) provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

The purpose of postjudgment interest is to compensate the successful litigant for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the opposing party. *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382, 1383 (9th Cir. 1992). The judgment on damages needs to be supported by the evidence to have been ascertained in any meaningful way. *Id.* at 1383. Since Plaintiff has provided evidence to sufficiently ascertain the judgment of damages, Plaintiff is thus entitled to postjudgment interest calculated at the statutory rate.

### 4. Attorneys' Fees

Since this is a diversity action, the law of the forum state governs the interpretation of the agreement that may allow for an award of attorneys' fees. *See United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989). Under California law, "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is

the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1267 (9th Cir. 2010) (citing Cal. Civ. Code § 1717(a)).

California law affords courts broad discretion to determine the reasonableness of an attorneys' fee award. *PLCM Group, Inc. v. Drexler*, 22 Cal. App. 4th 1084, 1095 (2000). Attorneys' fees are determined using the lodestar method, which begins by determining the reasonable number of hours expended by counsel for the moving party, multiplied by a reasonable hourly rate. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001). The lodestar may be adjusted upward or downward based on several factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 64 (2009). The burden is on the party seeking attorneys' fees to prove that the fees it seeks are reasonable. *Id.* at 98.

In most cases, a declaration provides adequate evidence of the prevailing hourly rates in the relevant legal community. *See, e.g.*, *Davis v. City of San Diego*, 106 Cal. App. 4th 893, 903–04 (2003). However, "[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise." *PLCM Group, Inc.*, 22 Cal. App. 4th at 1096. Accordingly, a court "may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." *Id*. "An experienced trial judge is in a position to assess the value of the professional services rendered in his or her court." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001).

Here, JBS seeks $31,720.00 in attorneys' fees following entry of default judgment. (Loewe Decl. ¶ 27.) In support of its request, JBS submits the declaration of Senior Counsel Azar M. Khazian and accompanying time records, attached as Exhibit 1 to the Notice of Lodgment, which detail the hours expended and the nature of the work performed. (Khazian Decl. ¶ 11; Ex. 1.)

  The Court finds both the time expended and the hourly rates sought to be reasonable. Plaintiff's counsel spent approximately 80 hours on this case, which is sensible for the legal work required and documented. (Khazian Decl. ¶ 3.) Additionally, the hourly rates for the two primary attorneys handling the matter ranged from $375 to $385. (*Id.* ¶¶ 9–10.) The supervising partner billed at an hourly rate of $450. (*Id.* ¶ 8.)

  The Court finds these rates reasonable and consistent with prevailing market rates for similar legal services in this jurisdiction, as evidenced by Plaintiff's cited case law. *See Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154–57 (2006) (finding that a $350 hourly rate for a San Diego-based attorney litigating in Imperial County was reasonable 18 years ago). The USAO *Laffey Matrix* further supports the requested rates, indicating that as of 2021, attorneys with 16–20 years of experience commanded hourly rates of $591, while those with 11–15 years of experience earned $532. (Khazian Decl. ¶ 11; Ex. 3.) Accordingly, the Court finds the requested fees to be reasonable and awards attorneys' fees in the amount of $31,720.00.

  **5. Costs**

  Lastly, JBS seeks $2,354.87 in costs. (Loewe Decl. ¶ 27.) Unlike attorneys' fees, which are governed by state law, the award of costs is governed by federal law under Rule 54(d). *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987). In diversity actions, federal law controls costs, not state law. *Bmo Harris Bank N.A. v. Singh*, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016). Under 28 U.S.C. § 1920, which authorizes federal courts to award certain litigation costs to the prevailing party, taxable costs—which the losing party may be required to reimburse—"are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

  Here, the declaration of Senior Counsel Azar M. Khazian and documentation, attached as Exhibit 2 to the Notice of Lodgment, details the costs incurred including "filing

fees, motion fees, service of process fees, and online legal research fees." (Khazian Decl. ¶ 11; Ex. 2.) Plaintiff's filing fees and service of process expenses are taxable costs. *See* 28 U.S.C. § 1920(1); *see also* Civ. Loc. Rule 54.1(b)(1) (providing that "[f]ees for service of process . . . are allowable.").

Furthermore, nontaxable costs under 28 U.S.C. § 1920, such as the pro hac vice admission fees and computerized legal research, are still recoverable in this instant action. The Supreme Court has stated that the federal cost statutes simply "establish a clear baseline," allowing for the recovery of "litigation expenses that are not specified" in statutes like § 1920 when "express authority" permits it. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339 (2019). For instance, in *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 437 (1987), the Supreme Court observed that "contract or explicit statutory authority" could allow a court to grant costs and fees beyond what federal law typically prescribes. The Ninth Circuit has consistently recognized that a "contractual right" may authorize the recovery of costs that federal law would otherwise prohibit. *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 543 (9th Cir. 1996); *see also Hobson v. Orthodontic Cntrs. of Am. Inc.*, 220 F. App'x 490, 491 (9th Cir. 2007) ("The plain language of the Agreement indicated that OCA and Hobson intended the prevailing party to recover all its costs. Therefore, 28 U.S.C. §§ 1821 and 1920 do not control.").

Accordingly, the Court finds that JBS is not limited to the costs outlined in § 1920 because of the parties' indemnification provisions, which entitle the prevailing party to recover "costs and expenses (including attorney's fees and proceeding costs) arising from or relating to Seller's breach of any terms, representations or warranties of this Agreement." (Compl. ¶ 17.) "'While it is reasonable to interpret general contractual cost provision by reference to an established statutory definition of costs,' where sophisticated parties freely choose to provide 'a broader standard authorizing recovery of reasonable litigation charges and expenses,' that standard may be enforced." *Instrumentation Lab'y Co. v. Binder*, No. 11cv965 DMS (KSC), 2013 WL 12049072, at *7 (S.D. Cal. Sept. 18,

2013) (quoting *Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co.*, 47 Cal. App. 4th 464, 491–92 (1996)).

Accordingly, the Court finds the costs associated with the pro hac vice admission fees and computerized legal research are reasonable in light of the parties' contractual agreement and grants the nontaxable costs. In sum, the Court awards costs in the total amount of $2,354.87.

### D.  Motion to Seal

Plaintiff previously filed an Amended Motion seeking leave to file its Complaint under seal. (ECF No. 15.) The Court granted the motion, finding that sealing was necessary to protect JBS's commercially sensitive information, as public disclosure could compromise its competitive standing in the meat processing industry. (ECF No. 17.) Plaintiff now seeks the same protection for identical information contained in its Motion for Default Judgment and the Declaration of J.T. Loewe. (ECF No. 19.) The Court's prior reasoning applies with equal force to the present request. Accordingly, the Court **GRANTS** Plaintiff's Motion to Seal.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment and Request for Attorneys' Fees and Costs (ECF No. 21) against Phillips Cattle and awards JBS $153,743.11, plus postjudgment interest. This amount includes attorneys' fees of $31,720.00 and costs totaling $2,354.87. Furthermore, the Court **GRANTS** Plaintiff's Motion to Seal. (ECF No. 19.) The Court directs the Clerk of the Court to accept and **FILE UNDER SEAL** the requested document. (ECF No. 21.)

**IT IS SO ORDERED.**

DATED: February 24, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court